IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SCOTT N. STERNER, SR.** | : | CIVIL ACTION |
| Plaintiff | : | No. 13-cv-1568 |
| v. | : | |
| COUNTY OF BERKS, PENNSYLVANIA; | : | |
| Defendant | : | |
| | : | JURY TRIAL DEMANDED |

<u>BRIEF IN SUPPORT OF PLAINTIFF'S, SCOTT N. STERNER, SR.'S, MOTION FOR A JUDGMENT AS A MATTER OF LAW, PURSUANT TO FED. R. CIV. P. 50(b), OR, IN THE ALTERNATIVE, FOR A NEW TRIAL, PURSUANT TO FED. R. CIV. P. 59(a)</u>

On March 30, 2015, a jury verdict was entered against the Plaintiff, Scott N. Sterner, Sr., in this action. See Exhibit A, Verdict Slip. The Court's ruling, based upon the jury verdict, was entered on the same date. See Exhibit B, Entry of Ruling. Plaintiff has moved for a Judgment as a Matter of Law, pursuant to Fed. R. Civ. P. 50(b), or, in the alternative, for a new trial, pursuant to Fed. R. Civ. P. 59(a).

Following the presentation of his evidence at trial the Plaintiff made an oral motion under Fed. R. Civ. P. 50(a) for a judgment as a matter of law. The Court denied said motion and the present renewed motion is being made in a timely fashion, pursuant to Fed. R. Civ. P. 50(b) and 59(a).

I.   NATURE OF ACTION

The case at hand concerns the Plaintiff's allegations that he was retaliated against by the Defendant subsequent to engaging in "protected activities". Plaintiff filed his first Human Resources Complaint with the County of Berks Human Resources Department for sexual harassment against Sandra Graffius, the Controller for the County of Berks, for the sending of nude emails and inappropriate jokes and remarks. Plaintiff filed his second Human Resources

1

Complaint for continuing sexual harassment and for retaliation alleged again against Sandra Graffius. Plaintiff filed his first EEOC/PHRC complaint against the County of Berks Human Resources Department and Sandra Graffius after his first and second HR complaints resulted in continuing and increasing levels of retaliation against him and his friends and staff. Plaintiff then filed his second EEOC/PHRC complaints following his termination, alleging his termination was done in a retaliatory fashion by Sandra Graffius and the Human Resources Department with the aid of the Solicitor's Office. The above represents four separate and distinct protected activities, six if you count the PHRC complaints separately from the EEOC complaints.

## II. STANDARD OF REVIEW

*RULE 50(b): Rule 50(b) allows the court to reserve decision on the question of law until after the case has been submitted to the jury and it has reached a verdict or is unable to agree. If the court decides the initial motion should have been granted, it may set aside the verdict of the jury and enter judgment as a matter of law. This was previously known as a judgment notwithstanding the verdict. Rule 50(b) also allows a motion for a new trial under Rule 59 to be joined in the alternative with a renewed motion for judgment as a matter of law.*
Fed. R. Civ. P. 50(b).

*RULE 59(a): In General;(1)* Grounds for New Trial. *The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; ....*
Fed. R. Civ. P. 59(a).

Retaliation

Plaintiff must prove, for his retaliation claim(s), that he engaged in a protected activity, this includes filing a Human Resources complaint in good faith and filing an EEOC/PHRC complaint. Plaintiff must show that because of engaging in a protected activity he was retaliated against by the Defendant; this is a "but-for" analysis. Finally, the Plaintiff must show the Defendant took an adverse action against the Plaintiff that is severe enough that it would discourage any reasonable person from engaging in a similar protected activity if they felt they too would face similar retaliation.

The anti-retaliation provision of Title VII prohibits an employer from discriminating against an employee because "he has opposed any … unlawful employment practice" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing…." 42 U.S.C. §2000e-3(a). To assert a *prima facie* case for retaliation, the Plaintiff must demonstrate that he engaged in an activity protected by Title VII or the PHRA, that the Defendant took an adverse employment action against him, and that there was a causal connection between the protected activity and the adverse employment action. Moore v. City of Philadelphia., 461 F.3d 311, 340-41 (3d Cir. 2006).

If the Plaintiff is able to establish a *prima facie* case of retaliation, the Court will then use the McDonnell Douglas burden-shifting framework; "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct and, if it does so, 'the plaintiff must be able to convince the fact finder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" Id. (*quoting* Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997)).

Judicial Notice

The Court can take notice of an adjudicated fact only, not a legislative fact. Fed. R. Evid. 201(a). The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known with the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information. Fed. R. Evid. 201(c). The court may take judicial notice at any stage of the proceeding. Fed. R. Evid. 201(d).

New Trial

Motions for a new trial can be granted if the trial judge finds the verdict is contrary to the weight of the evidence, contrary to law, and a result of error in the admission of evidence. Lind v. Schenley Industries, Inc. 278 F.2d 79 (3d Cir.), *cert. denied*, 364 U.S. 835 (1960). The Lind decision delineates and restricts the area within which the trial judge may properly grant a new trial on the ground that the verdict is against the weight of the evidence. The Third Circuit distinguishes new trials granted on this ground as compared to "new trials ordered for other reasons: for example, evidence improperly admitted, prejudicial statements by counsel, an improper charge to the jury or newly discovered evidence." See Id. at 90.

*The court distinguishes the two categories on the following basis: In the first instance given it is the jury itself which fails properly to perform the functions confided to it by law. In the latter instances something occurred in the course of the trial which resulted or which may have resulted in the jury receiving a distorted, incorrect, or an incomplete view of the operative facts, or some undesirable element obtruded itself into the proceedings creating a condition*

*whereby the giving of a just verdict was rendered difficult or impossible. In the latter instances ... the trial court delivered the jury from a possibly erroneous verdict arising from circumstances over which it had no control. Under these circumstances there is no usurpation by the court of the prime function of the jury s the trier of the facts.* Id. at 90.

**III.    ARGUMENTS**

First and foremost, there wasn't one witness for the Defendants that wasn't shown to be a liar. Graffius lied in the HR investigation completed by Jennifer Biehn when she denied calling the Plaintiff Nelson Long's "butt-buddy". Graffius lied when she testified would have fired the Plaintiff without the pending EEOC and PHRC complaints because her reason provided to terminate the Plaintiff was that he was giving her "too much pushback". Another term for "pushback" is resistance and or opposition to her harassing of the department employees and/or the Plaintiff standing firm to protect his right to be free from inappropriate emails and retaliatory conduct. Graffius lied when she wrote in the Plaintiff's termination letter that he admitted to asking another co-worker to borrow his gun so that the coworker could shoot another employee; no witnesses ever testified to those remarks except the Defendant's counsel, his tendency for avoiding the truth was without bounds. Graffius lied when she said she wasn't admitting to her planned retaliation when she told Todd Simpson she would win the war by taking things away from the Plaintiff's staff until they turn on him and force him out; there simply isn't another was to see that statement except as an admission of retaliation. Biehn certainly was proven to be a liar, prone to one-sided exaggeration; she famously forgot to either ask Graffius about the above-listed admission of retaliation or if asked forgot to write her response, errors that cannot be anything but an admission of the HR participation in Graffius' retaliation against the Plaintiff.

Moreover, while the HR Policies and Procedures Manual clearly lists the appropriate methodology to do a full and fair investigation, neither Biehn nor Baittinger bothered to provide either a full, fair, or impartial investigation for or to the Plaintiff. Both Sadler and Baittiner admitted that they let Graffius make the final decision to terminate the Plaintiff when that decision was already admitted by Sadler to be against the County's procedures to avoid a conflict of interest. Sadler clearly lied when she stated she chastised Graffius and when she said she could control Sandra Graffius. It is an easy process to remove a political official for "Abuse of Authority", perjury, and obstructing an official County civil rights investigation; these , of course, pale in the light of many allegations that could be made against Graffius outside this litigation.

Joanna Baittinger is a known liar, she admitted she helped Graffius draft the termination letter but within the letter is written facts never testified to or supported by any evidence. Only Baittinger and Defendant's counsel testified to the factual accuracy of the termination letter, neither were present and neither had anyone testify to the validity of the facts alleged in the termination letter. Baittinger lied about the investigation she performed, she stated that the cover page of her investigation didn't mean she thought the Plaintiff threatened to shoot a fellow co-worker when it specifically said the results of her investigation was that the Plaintiff threatened to shoot a fellow co-worker. Unfortunately for Baittinger, Sadler already admitted she told Baittinger she couldn't complete her investigation without interviewing Lumis; meaning Baittinger already concluded the facts she uncovered provided evidence that the Plaintiff said he wanted to shoot a fellow coworker. It is without a doubt that NOBODY ever testified that anybody wanted to shoot a coworker or anybody for that matter, these are lies concocted not just by Baittinger and Sadler but also by the County's attorney's who admitted they were hired

6

months prior to the Baittinger investigation into the joke told by the Plaintiff AND the Detective; subsequent the Plaintiff's EEOC/PHRC complaints. By the way, the lies are perfectly clear when considering the Detective who actually said the word "gun" in the first-person context and he wasn't even warned; so much for the "zero-tolerance" policy. Also, let's not forget the evidence the jury wasn't allowed to hear of the "Voodoo Doll" incident, evidence of disparate treatment.

The Defendant's witness Joanna Baittinger testified that the only reason the Plaintiff was terminated from the Defendant's employment was because it was alleged he violated their Disorderly Conduct Type One Policy ("Type 1 policy"). Joanna Baittinger testified that the Plaintiff was terminated because of the joke he told in the evidence room and because of what Judith Lumis heard, nothing else. Trial testimony of Joanna Baittinger and the "Termination Letter" itself stated that the Plaintiff was terminated based upon a violation of the Disorderly Conduct – Type 1, of the County of Berks Policy and Procedures Manual. The specific allegations within the termination letter were that the Plaintiff threatened fellow employees, including threatening to smuggle a gun into the building to ask a coworker to shoot a fellow employee.

With regards to engaging in a protected activity, all evidence presented clearly showed two Human Resources Complaints and two separate filings of an EEOC/PHRC complaint(s). As for the "good faith" requirement: Defendants admitted that the second HR Complaint contained allegations by the Plaintiff that Sandra Graffius admitted her plan to retaliate and that she called the Plaintiff the "butt-buddy" of Nelson Long. Jennifer Biehn admitted she told Sandra Graffius that by telling others that the Plaintiff filed the first HR complaint that it could be seen as an act of retaliation by Graffius. Both HR witnesses, Biehn and Baittinger, admitted the nude photos were not only examples of potential sexual harassment but that the HR Policies and Procedures

7

manual required the Plaintiff to report them; failing to do so could result in disciplinary action. Graffius admitted to sending the emails and she "apologized". Christine Sadler said she chastised Sandra Graffius for her actions. There is simply no reasonable person who couldn't accept the admissions of the HR staff that the second HR complaint was justifiably filed in good faith. What Plaintiff wouldn't have a subjective good faith filing with a "smoking gun" admission and the continued direct sexual insults by Graffius. The Court can most certainly take the HR staff admissions as objective good faith. As for the first EEOC and PHRC complaints, Mr. Sterner said he filed them because after going to the HR department with a reliable source telling him Graffius admitted to the ongoing retaliation that the HR department began aiding Graffius and never bothered to either investigate his claims or provide him with any results of their investigation but rather they focused solely on supporting the retaliation of Graffius. Finally, the second EEOC/PHRC complaints are *per se* good faith filings because after the three prior protected activities the Plaintiff was terminated from his job of nearly ten years of not only an excellent work record but also zero disciplinary actions. The Plaintiff was subjectively and objectively filing in good faith because, as stated above, he was relaying a word of a third party, told privately, within the context of a joke that all believed it was a joke and funny. Any reasonable person under the protected status of Title VII and the PHRA would file a second EEOC/PHRC complaint for being terminated for threats to people he never spoke to, concerning words he never said, about a word or words told to him by a third person now being relayed to another third person, in private, and that any allegation about shooting fellow employees, a non-existing prisoner, or "everyone" was clearly fabricated to hide the Defendants true motive of retaliation. The Court must take judicial notice of both subjective and objective good faith filings for at least the second, third and fourth protected activities; the second and third through

admission and the fourth through Title VII and the PHRA in conjunction with the prior good faith filings.

Adverse actions taken against the Plaintiff can clearly be shown by the final termination of the Plaintiff, that is undeniably an act that would cause a "chilling" effect; there simply is nothing more feared by an employee than to be fired for standing up for his own civil rights. Defendants put a new "low" on outrageous behavior because they were limited by their own HR Policies and Procedures and the existing and pending EEOC and PHRC complaints by the Plaintiff so they were forced to create a Type 1 violation when none existed and no witnesses' testimony supported it. Moreover, Defendants story on what the Plaintiff "intended" to do has varied wildly despite Judith Lumis clearly stating she never heard what was intended. Defendants, under oath and in court documents, swore the Plaintiff intended to shoot a prisoner and then when confronted admitted no prisoner ever existed; Defendant's HR investigation concluded that the Plaintiff intended to shoot a fellow co-worker; Defendant's termination letter stated that the Plaintiff asked a co-worker to borrow his gun so the co-worker could then shoot a fellow employee; that Plaintiff threatened to take the life of a co-worker; and on and on…. The only witnesses to the remarks alleged by the Defendants were the Defendants attorneys and HR staff who were not present and admitted to never asking Judith Lumis who she felt threatened by. The admission by Graffius that Lumis told her she felt concerned about Raymond Austin prior to the Plaintiff talking to Mr. Austin is clear evidence that the Defendants already knew of Lumis' and Austin's personal conflicts; most importantly, of Lumis' personal issues in general because she was already counseled on her yelling at fellow co-workers and Austin.

The only witness for the Defense that testified she heard the alleged comments of the Plaintiff was Judith **Lumis**, she stated: (1) she was never afraid of the Plaintiff; (2) the Plaintiff

9

was a nice guy; (3) the Plaintiff never spoke to her when he was speaking to Raymond Austin; (4) Raymond Austin was the person she felt threatened by; (5) her fears and/or concerns about Raymond Austin began prior to the Plaintiff talking to Mr. Austin; (6) he could have been telling Raymond Austin of the joke told earlier in the evidence room because she didn't hear the beginning or end of the conversation and she only hear five words clearly; (7) the Plaintiff had no way to know she was eavesdropping on his conversation with Raymond Austin because her door was closed and she didn't come out of her office to question the Plaintiff about what he was telling Mr. Austin; (8) it was Raymond Austin that she believed posed a threat to everybody in general even though he never said a word; (9) that Mr. Austin's high respect for the Plaintiff would subject Mr. Austin from unknown "suggestive" mind control; and, (10) Judith Lumis never heard what the Plaintiff said he intended to do with regards to the word "gun"; etc…

Basically, Defendants only witness is not only lacking credibility but she may also be more than a bit unstable. No reasonable person or even a highly unreasonable person would believe that "everyone" would be threatened by Raymond Austin if he said nothing simply because Judith Lumis theories on mind control and/or suggestive powers gives her a paranormal insight not yet recognized by any court of law. In fact, Judith Lumis' behavior is a *per se* admission by the Defendants that they not only have no witnesses that can produce credible testimony but that they have known for some time that they fraudulently misrepresented even Ms. Lumis' testimony. Ms Lumis was threatened by Raymond Austin, Ms. Lumis told Sandra Graffius of those fears prior to the Plaintiff talking to Mr. Austin, Ms. Lumis never heard more than five words clearly, Ms. Lumis never was threatened by the Plaintiff, Ms. Lumis never heard what the Plaintiff intended to do when she heard the word "gun", Ms. Lumis admitted the Plaintiff could have been telling Mr. Austin about a joke, Ms. Lumis' fear for everyone was

based upon an individual she was facing possible disciplinary action from because Mr. Austin had filed a prior HR complaint against her, and that Ms. Lumis' testimony over the last three times she testified under oath has remained just as unreliable and utterly impossible to base any disciplinary action upon with regards to the Plaintiff.

To put it more bluntly, the Court should immediately consider Judith Lumis' testimony as an admission by the Defendants that absolutely no threats could be made by the Plaintiff when he didn't directly or indirectly speak to or about Ms. Lumis, Ms. Lumis said she was threatened not by the Plaintiff but by a third party who never spoke, and that Ms. Lumis' position as the only witness for the Defendants is an admission that no threat was made by the Plaintiff and the Defendants fabricated their justification to terminate Mr. Sterner. The Court should immediately sanction the Defendants and their attorneys for relying upon a clearly unstable individual for years, committing a litany of perjured testimony concerning what Ms. Lumis actually heard and/or actually feared. The Defendants' representations that Ms. Lumis feared and/or was threatened by the Plaintiff was only testified to by the Defendant's attorneys. In fact, it gets much worse: Not only is Judith Lumis' testimony lacking credibility or irrelevant, she wasn't even interviewed prior to the Human Resources Department coming to their conclusion that the Plaintiff threatened a fellow employee. Both Joanna Baittinger and Christine Sadler testified that Christine Sadler, the Assistant Solicitor for Berks, made the HR investigation interview another person to justify terminating the Plaintiff, the last person the HR department interviewed was Judith Lumis.

The HR department came to the conclusion that the Plaintiff threatened someone prior to anyone they interviewed testifying to being threatened. EVERY witness in the evidence room said it was a joke, made in a jovial atmosphere, amongst friends, and the Detective said the word

"gun".  Raymond Austin and the Plaintiff testified it was a joke when interviewed, that the Plaintiff told Austin the word "gun" in the context of what the detective said in the joke. Basically, the HR Department, even with Lumis' interview, still had no evidence that the Plaintiff wasn't telling a joke and that when the word "gun" was said it was being told in the third-person with regards to the Detective.  Talk about a violation of First Amendment Rights, it is not within any courts authority to hold an individual to blame for relaying what was said by a third party to another third party within the context of an admitted joke; especially, when all witnesses actually present testified no threats were made.

As for a "zero-tolerance policy", the fraud perpetrated upon the Court and the finders of fact is without bound by the Defendants.  All evidence clearly indicates only the Harassment policy as it relates to the civil rights of employees to be free from sexual harassment, retaliation, and other employment civil rights is the only section the County's zero-tolerance policy applies to.

The County of Berks Policies and Procedures Manual requires a direct threat of bodily harm for a Type 1 violation.  Even if an indirect threat of bodily harm was permitted it couldn't be shown by the witness Judith Lumis.  Lumis testified the Plaintiff didn't speak to her, she didn't fear the Plaintiff, and she also didn't have a present fear of Raymond Austin because she knew he didn't have a gun.

The testimony of the witnesses present in the evidence room was stipulated to and agreed that they heard a joke or didn't hear the joke but would have thought it was a joke if they did hear it; any representation to the contrary should face Court sanctions.

12

Defendants should be estopped from denying that the nude emails could be considered sexual harassment and that the Plaintiff and others were under a mandatory obligation to report the emails because the Defendant's written policies specifically define it and require it.

To repeat: Defendant's own witness, Jennifer Biehn, admitted the Plaintiff's second report to the Human Resources Department of continued sexual harassment and retaliation was at least valid as it concerns retaliation when she told Sandra Graffius that it was wrong for her to tell the Plaintiff's co-workers that he filed the first sexual harassment claim with the Human Resources Department; the parties dispute whether the sexual harassment was still ongoing at that time, sexual harassment not being at issue here because the Court dismissed it.

Joanna Baittinger testified that the Plaintiff, in the ten years he worked for the Defendant never had a disciplinary action taken against him except for the basis they alleged he was terminated for, the "Type 1" violation. Since Jennifer Biehn already admitted she considered the emails to be possibly considered sexual harassment pursuant to the Defendant's Policies and Procedures Manual ("Defendant's Manual"), since Joanna Baittinger, the other Human Resources employee, said she too would have considered the nude emails to in violation of the Defendant's Manual, and since the Defendant's Manual clearly defines nude emails as an example of what may be considered sexual harassment and that the Plaintiff and others were under a mandatory obligation to report said emails there is no doubt that the Plaintiff subjectively and objectively filed his original Human Resources complaint in good faith. The Defendant must not be allowed to have it both ways, to punish the Plaintiff for not reporting the behavior and to punish him for reporting it; the Defendant's admissions should allow the Court to take judicial notice of the fact that the Plaintiff was required to report the emails and that the emails themselves, pursuant to the Defendant's own definition, could be considered sexual harassment.

The Defendant's defense that the emails did not rise to the level of sexual harassment wasn't that the nude emails didn't violate their own policies but rather that they weren't sent in enough frequency to arise to the level of sexual harassment as is required by Title VII and the PHRA; it is not that Plaintiff accepts that rationale but there is an undeniable high likelihood that the outrageous emails would have continued to be sent to the entire Controller's staff had the Plaintiff not filed his original Human Resources complaint. Had the emails continued this case would most assuredly still have included a sexual harassment claim.

### III. CONCLUSION

For the forgoing reasons, Plaintiff, Scott N. Sterner, Sr. respectfully moves this Court to enter an order for the Plaintiff notwithstanding the verdict of the jury or in the alternative for the Plaintiff to receive a new trial.

| | |
|---|---|
| April 9, 2015 | Respectfully submitted |
| | /s/ Daniel J. Mazaheri, Esquire<br>Daniel J. Mazaheri, Esquire<br>PA BAR ID#85561<br>P.O. Box 275<br>Lampeter, PA 17537<br>(717) 951-2322<br>Plaintiff's Counsel |